IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| O'REILLY WINSHIP, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:21-CV-2719-N |
| | § | |
| SNAPRAYS, LLC, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

This Order addresses the construction of several disputed claim terms pursuant to *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). Snaprays LLC ("SnapPower") contends that O'Reilly Winship, LLC ("OWL") infringes United States Patent Nos. 9,871,324 (the '324 Patent) and 9,035,180 (the '180 Patent). Having reviewed the relevant intrinsic evidence in the record, and such extrinsic evidence as necessary, the Court construes the disputed terms and phrases as provided below.

### I. BACKGROUND OF THE INVENTIONS

The Patents relate to a cover for an electrical box, such as an outlet or light switch, where the cover is configured to make an electrical connection with the device in the box, and the electricity can then be used to power electrical loads built into the cover, such as a night light.

## II. BASIC CLAIM CONSTRUCTION STANDARDS

Claim construction is a question of law for the Court, *see Markman*, 517 U.S. at 391, although it may involve subsidiary factual questions. *See Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 324-28 (2015). In construing the claims of a patent, the words comprising the claims "are generally given their ordinary and customary meaning" as understood by "a person of ordinary skill in the art in question at the time of the invention." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc) (citations and internal quotation marks omitted). Accordingly, courts must determine the meaning of claim terms in light of the resources that a person with such skill would review to understand the patented technology. *See id.* at 1313 (citing *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1477 (Fed. Cir. 1998)).

First, "the person of ordinary skill in the art is deemed to read the claim term . . . in the context of the entire patent, including the specification." *Id.* If the specification "reveal[s] a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess . . . , the inventor's lexicography governs." *Id.* at 1316. Likewise, if "the specification . . . reveal[s] an intentional disclaimer, or disavowal, of claim scope by the inventor . . .[,] the inventor's intention, as expressed in the specification, is regarded as dispositive." *Id.* (citation omitted). While the claims themselves provide significant guidance as to the meaning of a claim term, the specification is generally dispositive as "it is the single best guide to the meaning of a disputed term." *Id.* at 1314-15 (internal quotation marks omitted).

ORDER – PAGE 2

In addition to the specification, courts must examine the patent's prosecution history – that is, the "complete record of the proceedings before the PTO and includ[ing] the prior art cited during the examination of the patent." *Id.* at 1317 (citation omitted). "Like the specification, the prosecution history provides evidence of how the PTO and the inventor understood the patent." *Id.* (citation omitted). In particular, courts must look to the prosecution history to determine "whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Id.* (citations omitted). "[W]here the patentee has unequivocally disavowed a certain meaning to obtain his patent, the doctrine of prosecution disclaimer attaches and narrows the ordinary meaning of the claim congruent with the scope of the surrender." *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1324 (Fed. Cir. 2003).

Finally, in addition to evidence intrinsic to the patent at issue and its prosecution history, courts may look to "extrinsic evidence, which 'consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises.'" *Phillips*, 415 F.3d at 1317 (quoting *Markman*, 52 F.3d at 980). In general, extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms." *Id.* at 1318.

When the intrinsic evidence, that is the patent specification and prosecution history, unambiguously describes the scope of a patented invention, reliance on extrinsic evidence, which is everything outside the specification and prosecution history, is improper. *See Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996). While the Court may consult extrinsic evidence to educate itself about the invention and relevant

technology, it may not rely upon extrinsic evidence to reach a claim construction that is clearly at odds with a construction mandated by the intrinsic evidence. *See Key Pharm. v. Hercon Labs. Corp.*, 161 F.3d 709, 716 (Fed. Cir. 1998).

### III. DISPUTED TERMS

A recurring theme in the claim construction briefing in this case is that SnapPower contends that OWL "has committed one of the cardinal sins of patent law — reading a limitation from the written description into the claims." *SciMed Life Systems, Inc. v. Advanced Cardiovascular Systems, Inc.*, 242 F.3d 1337, 1340 (Fed. Cir. 2001). SnapPower, in contrast, argues that very few of the disputed terms require construction and most can be given their ordinary meaning. *See, e.g., Mannatech, Inc. v. Wellness Quest LLC*, 2015 WL 12731760, at *3-4 (N.D. Tex. 2015).

Also, some of the disputed terms were construed by the International Trade Commission (ITC) in *In re Certain Powered Cover Plates*, Inv. No. 337-TA-1124 (Feb. 21, 2019). *See* SnapPower Appx. Ex. N [25-14] (the "ITC Decision").

### A. U.S. Patent No. 9,871,324

#### 1. At least one clip

OWL's Proposed Construction – A clip comprising non-wire conductive elements and optionally non-conductive elements

SnapPower's Proposed Construction – No construction is necessary

Analysis – Claim 1 is instructive:

> An active cover plate comprising: a face plate; an electrical load; at least one clip extending rearward from the faceplate, the clip comprising: a contact; a resilient strip supporting a front side of the contact, wherein the contact is

>joined to the resilient strip and extends through an aperture in the resilient strip; and a rear insulator covering a rear side of the contact; and an electrical connection between the clip and the electrical load.

'324 Patent, c. 30, l. 25-32. Thus, the claim itself defines what is meant by "clip." The other independent claims, 13 and 17, are similar in that respect. This is not to say the claim language is self-executing.

It appears to the Court that the claim can be parsed as follows:

1. An active cover plate comprising:

>[a] a face plate;

>[b] an electrical load;

>[c] at least one clip extending rearward from the faceplate,

>the clip comprising:

>>[1] a contact;

>>[2] a resilient strip

>>>[A] supporting a front side of the contact,

>>>[B] wherein the contact is joined to the resilient strip and

>>>[C] extends through an aperture in the resilient strip;

>>and

>>[3] a rear insulator covering a rear side of the contact;

>and

>[d] an electrical connection between the clip and the electrical load.

ORDER – PAGE 5

Given this parsing, it appears to the Court that the claim itself adequately defines "clip" for purposes of claim 1 and its dependent claims. The same holds true of independent claims 13 and 17. Admittedly, some of the subsidiary terms may require further discussion below. But the Court agrees that given the explication in the claim language itself, OWL's proposed construction improperly imports limitations from the specification into the claim language. *See SciMed*, *supra.*

### 2. Resilient strip

OWL's Proposed Construction – A resilient conductor, or resilient combination of materials comprising at least one material that is conductive

SnapPower's Proposed Construction – No construction is necessary

Analysis – OWL's construction imports the limitation that the resilient strip be electrically conductive. Although a resilient conductor is discussed in the specification, the Court sees no reason to require that limitation. *See SciMed*, *supra*.

SnapPower's proposal fails to inform the jury of the meaning of resilient. That is not a term that would be apparent to all jurors. Accordingly, the Court will adopt the construction and reasoning of the ITC construction:

A strip capable of springing back into a predetermined shape after being bent or compressed. ITC Decision at 23-24.[1]

---

[1] Interestingly, SnapPower supported this construction before the ITC.

   3.   *A resilient strip supporting a front side of the contact*

OWL's Proposed Construction – A resilient conductor, or resilient combination of materials comprising at least one material that is conductive that provides an engagement with a front surface of the contact

SnapPower's Proposed Construction – No construction is necessary

Analysis – In view of the Court's construction of "resilient strip," the Court agrees that no further construction of this phrase is necessary.

   4.   *The contact is joined to the resilient strip*

OWL's Proposed Construction – The contact is mechanically and electronically coupled with the resilient strip to allow electrical current flow

SnapPower's Proposed Construction – No construction is necessary

Analysis – OWL's proposed construction improperly imports the limitation that "join" requires an electrical (or electronic) connection. The Court agrees with SnapPower that such a limitation is not inherent in the concept of joined. Because "joined" is a word of common usage, the Court agrees that no further construction of this phrase is necessary.

   5.   *An electrical connection between the clip and the electrical load*

OWL's Proposed Construction – An electrically conductive wire connected between a conductive portion of the clip, i.e., the resilient strip, and the electrical load

SnapPower's Proposed Construction – No construction is necessary

Analysis – OWL's proposed construction improperly limits the electrical connection to being a wire. The Court sees no reason to limit the electrical connection to a wire. Accordingly, the Court agrees that no construction is necessary.

### 6. *Sandwiched between*

OWL's Proposed Construction – No air gap, with a third element placed between a first and second element

SnapPower's Proposed Construction – No construction is necessary

Analysis – The parties appear to disagree on whether the concept of "sandwich" allows for any air in the assembly. OWL says no air; SnapPower would appear to allow for a sandwich with no contact between the "bread" and "meat." Those positions both seem too extreme to the Court. The Court agrees with SnapPower that no air gap is close to physically impossible. The Court will take a middle ground position and construes "sandwiched between" as: a third element placed between and in contact with a first and second element.

### 7. *Clip*

OWL's Proposed Construction – A clip comprising non-wire conductive elements and optionally non-conductive elements

SnapPower's Proposed Construction – No construction is necessary

Analysis – In view of the Court's discussion above of "at least one clip," no further discussion or construction is necessary.

### 8. *Conductor connected to the contact*

OWL's Proposed Construction – A conductive material coupled to the conductive part of the device intended to make contact with the power connector/screw terminal of the electrical outlet through a mechanical and electrical connection

SnapPower's Proposed Construction – No construction is necessary

ORDER – PAGE 8

Analysis – OWL's construction appears unnecessarily complicated. As these are relatively straightforward terms, the Court agrees with SnapPower that no construction is necessary.

### 9. Joined

OWL's Proposed Construction – Electrically and/or mechanically coupled with a material

SnapPower's Proposed Construction – No construction is necessary

Analysis – OWL's proposed construction primarily replaces the common word "joined" with the less common word "coupled." The phrase "electrically and/or mechanically" appears to be a limitation not inherent in the concept of "joined" and conceivably could exclude connections other than electrical or mechanical. The Court agrees with SnapPower that no construction is necessary.

### 10. Molded feature

OWL's Proposed Construction – Molded from the same material as a plate

SnapPower's Proposed Construction – No construction is necessary

Analysis – OWL's proposed construction imports limitations from the specification into the claim; the claim facially does not require the molded feature to be of the same material as a plate. The Court agrees with SnapPower that no construction is necessary.

### 11. Posts

OWL's Proposed Construction – A volumetric shape that extends from a plate

SnapPower's Proposed Construction – No construction is necessary

Analysis – OWL's proposed construction replaces a simple word with a complicated word. Dictionary.com defines "volumetric" as of or relating to measurement by volume. In that context, it is unclear what it means to be a shape of or relating to measurement of volume, or how that relates to a post. The Court agrees with SnapPower that no construction is necessary.

### 12.   Posts compressed

OWL's Proposed Construction – A volumetric shape that extends from the plate that can be compressed and thereby reduce its volume

SnapPower's Proposed Construction – No construction is necessary

Analysis – For the same reason in the discussion of "Posts" above, the Court agrees with SnapPower that no construction is necessary.

### 13.   Three spaced apertures

OWL's Proposed Construction – Three openings through a plate that are spaced apart from each other

SnapPower's Proposed Construction – No construction is necessary

Analysis – The principle point of disagreement is whether an "aperture" includes an opening covered by a clear material, or merely a physical opening through which air could pass. The Court find the extrinsic evidence supports a construction of "aperture" as "opening." The Court finds that "three spaced" does not require construction. Whether that construction would encompass OWL's design is a matter for another day.

### 14. *Opposing clips*

OWL's Proposed Construction – At least two clips comprising non-wire conductive elements and optionally non-conductive elements that are spaced apart from one another

SnapPower's Proposed Construction – No construction is necessary

Analysis – In view of the Court discussion of "clips" above, no further construction of this term is necessary.

### 15. *A light pipe*

OWL's Proposed Construction – A cylindrical element that transports light from a first end to a second end of the cylinder

SnapPower's Proposed Construction – No construction is necessary

Analysis – The Court disagrees with SnapPower that no construction is necessary; the term "light pipe" could well be confusing to a lay juror. OWL's proposed construction improperly adds restrictions: (1) cylindrical shape, and (2) two ends. Based on the extrinsic evidence, the Court will adopt the construction "a conduit for light." *See* Horenstein Decl. ¶¶ 58, 60.

### 16. *A main ramp*

OWL's Proposed Construction – A ramp shape having a specified angle from an axis defined at one end of the ramp

SnapPower's Proposed Construction – No construction is necessary

Analysis – OWL's proposed construction is somewhat recursive in that it defines "ramp" in terms of "ramp." It also introduces the idea of a specified angle, which is not inherent

in the concept of "ramp," and also provides no explanation for what the specified angle is or how to determine it. The Court agrees with SnapPower that no construction is necessary.

### 17. *Rear insulation*

OWL's Proposed Construction – An insulating or non-conductive material that is separate from a conductive material and at a back or rear side of the conductive material

SnapPower's Proposed Construction – No construction is necessary

Analysis – OWL again recursively defines "insulation" in terms an insulating material, and "rear" in terms of rear side. It also introduces the additional concept of conductive material that appears unnecessary to understand insulation. The Court agrees with SnapPower that no construction is necessary.

### 18. *Conductive portions of clip*

OWL's Proposed Construction – Material capable of allowing transmission of electrical current

SnapPower's Proposed Construction – No construction is necessary

Analysis – It does not appear that the parties seriously disagree as to the meaning of "conductive." It also appears to the Court that that is a relatively straightforward term that a typical lay juror would understand. Moreover, OWL's proposal omits any reference to the clip. Accordingly, in view of the Court's prior discussion of "clip," no further construction is necessary.

### 19. *Configured to bend*

OWL's Proposed Construction – Structure to (i.e., configured to) curve or angle

ORDER – PAGE 12

SnapPower's Proposed Construction – No construction is necessary

### 20. Disputed Term - *Configured to fit*

OWL's Proposed Construction – Structure to (i.e., configured to) be the right shape or size

SnapPower's Proposed Construction – No construction is necessary

### 21. *Configured to guide*

OWL's Proposed Construction – Structure that (i.e., configured to) direct motion or positioning

SnapPower's Proposed Construction – No construction is necessary

### 22. *Configured to contact*

OWL's Proposed Construction – Structure to (i.e., configured to) physically touch

SnapPower's Proposed Construction – No construction is necessary

Analysis – The Court groups these terms together because they all raise the same issue. OWL contends that use of the term "configured" invokes means-plus-function analysis under 35 U.S.C. § 112(f). Generally, the use of the word "means" gives rise to a presumption that means-plus-function applies, and conversely, the absence of the word "means" gives rise to a presumption that means-plus-function does not apply. *See generally Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015) (en banc). The Court finds that here, the term "configured" itself refers to the physical design of the structure in relation to other structural elements, and so itself recites structure. *See Nevro Corp. v. Boston Sci. Corp.*, 955 F.3d 35, 40 (Fed. Cir. 2020). Accordingly, the Court finds that OWL has not rebutted the presumption and that means-plus-function does not apply to the listed terms.

### 23. *An upright portion (of the resilient strip)*

OWL's Proposed Construction – A portion of the resilient strip perpendicular to the face of the device

SnapPower's Proposed Construction – No construction is necessary

Analysis – OWL's construction introduces the term "perpendicular," which is not found in the claim language. "Perpendicular" appears to be a more stringent requirement than "upright," and would improperly exclude one of the embodiments from the specification. *See* Fig. 6B. The Court finds from the extrinsic evidence that, together with the figures, the term "upright portion" would be sufficiently clear to a person of ordinary skill in the art such that no further construction is necessary. *See* Horenstein Decl. ¶¶ 142-146.

### 24. *An upright portion (of the rear insulator)*

OWL's Proposed Construction – A portion of the rear insulator perpendicular to the face of the device

SnapPower's Proposed Construction – No construction is necessary

Analysis – See preceding term.

### 25. *Integrally molded*

OWL's Proposed Construction – Molded from the same material as the plate

SnapPower's Proposed Construction – No construction is necessary

Analysis – *See* discussion of "molded feature" above.

### 26. Statically joined

OWL's Proposed Construction – Being at rest, without movement, and electrically and/or mechanically coupled with a material

ORDER – PAGE 14

SnapPower's Proposed Construction – No construction is necessary

Analysis – The Court has previously discussed "joined," and no further discussion of that terms is necessary.   The word "statically" appears to have a clear meaning in the field of mechanical engineering, *see* Horenstein Decl. ¶¶ 158-160, though perhaps not one known to lay jurors.   The Court will adopt the construction: joined so as not to move relative to one another.

### B. U.S. Patent No. 9,035,180

#### 1. *A spring clip*

OWL's Proposed Construction – A clip comprising non-wire conductive and optionally non-conductive resilient materials comprising at least one material that is conductive

SnapPower's Proposed Construction – No construction is necessary

Analysis – As with claim 1 of the '324 Patent, "clip" in claim 1 of the '180 Patent is also defined in the language of the claim.   No further construction is necessary.

#### 2. *A flexible conductive portion*

OWL's Proposed Construction – A material capable of conducting electrical current and is capable of bending and changing position with minimal force, that is not a wire, but a resilient conductor

SnapPower's Proposed Construction – No construction is necessary

Analysis – OWL's construction improperly adds the limitation that the flexible conductive portion not be a wire.   That limitation is not supported by the claim language. The Court holds that these are words of common usage and no further construction is necessary.

### 3. *A non-conductive portion*

OWL's Proposed Construction – A material that does not easily conduct electrical current

SnapPower's Proposed Construction - No construction is necessary

Analysis – The Court holds that these are words of common usage and no further construction is necessary.

### 4. *An electrical contact on the spring clip*

OWL's Proposed Construction – A resilient conductor, or resilient material comprising at least one material that is conductive that provides an engagement with a contact that is physically coupled with the clip

SnapPower's Proposed Construction - No construction is necessary

Analysis – The Court holds that these are words of common usage and no further construction is necessary.

### 5. *A main ramp*

OWL's Proposed Construction – A ramp shape having a specified angle from an axis defined at one end of the ramp

SnapPower's Proposed Construction – No construction is necessary

Analysis – *See* Part III.A.16 above (main ramp).

### 6. *A terminal curve*

OWL's Proposed Construction – A curve that is reversed from a previous curve in a material or a bending back within its own defined space from a first bend or a curve that changes direction from an original curve

SnapPower's Proposed Construction – No construction is necessary

ORDER – PAGE 16

Analysis – OWL's proposed construction unnecessarily complicates the phrase and appears to import limitations from the specification that are not inherent in the claim language. It is possible that this usage of "terminal" might be confusing to a lay juror. In an abundance of caution, the Court will construe this phrase to mean: a curve at the end of the main ramp.

7. *A skirt*

OWL's Proposed Construction – A covering that extends over or around an element

SnapPower's Proposed Construction – No construction is necessary

Analysis – Although there does not appear to be much disagreement as to the meaning of "skirt" in this context, it perhaps would not be immediately clear to a lay juror. The Court will construe "skirt" as being a covering. *See* Horenstein Decl. ¶ 97.

8. *Reverse curve*

OWL's Proposed Construction – A curve that is reversed from a previous curve in a material or a bending back within its own defined space from a first bend or a curve that changes direction from an original curve

SnapPower's Proposed Construction – No construction is necessary

Analysis – Apparently, this term appears only in claim 8, which is not asserted. Accordingly, no construction is necessary.

9. *Extract*

OWL's Proposed Construction – To remove by effort or force

SnapPower's Proposed Construction - No construction is necessary

Analysis – The Court finds that in this context, the extrinsic evidence supports the meaning of: to remove via a physical or chemical process.  *See* Horenstein Decl. ¶ 103.

### 10. *Configured to engage*

OWL's Proposed Construction – Structure to (i.e., configured to) interlink components allowing for physical support against an object or surface

SnapPower's Proposed Construction – No construction is necessary

Analysis – The primary point of disagreement is that OWL construes all of the "configured" terms to be means-plus-function.  *See* Part III.A.19-22 above.  The Court respectfully disagrees.  The term "engage" has a meaning to a person of ordinary skill in the art of "mutual effect via mechanical interaction."  *See* Horenstein Decl. at 51 (unnumbered para.).  The Court will adopt that construction of "engage."

### 11. *Configured to glide*

OWL's Proposed Construction – Structure for (i.e., configured for) smooth continuous motion

SnapPower's Proposed Construction – No construction is necessary

Analysis – The Court holds that no further construction is necessary.

### 12. *Configured to contact*

OWL's Proposed Construction – Structure to (i.e., configured to) physically touch

SnapPower's Proposed Construction – No construction is necessary

Analysis – The Court holds that no further construction is necessary.

*13.    Wherein a portion of the spring clip is configured to contact a wall of a receptacle box surrounding the receptacle body*

OWL's Proposed Construction – A spring clip having multiple positions that slide vertically or have multiple vertical positions to better connect to outlet/receptacle bodies with different orientations or different screw terminal placement

SnapPower's Proposed Construction – Wherein a portion of the spring clip is configured to contact a wall of a receptacle box surrounding the receptacle body when an electrical contact on the spring clip contacts a side screw terminal on the receptacle body

Analysis – OWL again argues that the "configure" terms should be construed as means-plus-function, and the Court disagrees.  OWL's construction otherwise unnecessarily complicates the claim language.  SnapPower's proposed construction introduces a temporal limitation: the portion of the spring clip that contacts a wall of the receptacle housing must be configured to do so at the same time the electrical contact has contacted the side screw terminal.  The Court does not find support for that temporal limitation in the claim language and declines to add it.  It seems slightly churlish for the Court not to construe the one phrase that SnapPower has requested.  But it appears to the Court that given the relatively straightforward language in this phrase, no further construction is necessary.

## Conclusion

The Court orders that the various patent terms are construed as indicated.  The Court has attempted to address all of the terms the parties believe require construction, but acknowledges that it may have missed something.  If there are terms requiring

construction that are not adequately addressed by this Order, the parties may request clarification. The Court will by separate order establish a schedule for resolution of the remaining issues in the case.

Signed February 7, 2023.

_____
David C. Godbey
Chief United States District Judge

ORDER – PAGE 20