IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

O'REILLY WINSHIP, LLC,                     §
                                           §
         Plaintiff,                        §
                                           §
v.                                         §          Civil Action No. 3:21-CV-02719-N
                                           §
SNAPRAYS, LLC,                             §
                                           §
         Defendant.                        §

## MEMORANDUM OPINION AND ORDER

This Order addresses Plaintiff O'Reilly Winship, LLC's ("OWL") motion for summary judgment [51] and Defendant Snaprays, LLC's ("SnapPower") motion for partial summary judgment [48]. Because the Court finds there is no genuine dispute of material fact and OWL's Accused Products do not infringe SnapPower's patents, the Court grants OWL's motion for summary judgment. The Court also grants SnapPower's motion for summary judgment as to OWL's tortious interference claim, but otherwise denies SnapPower's motion.

## I. ORIGINS OF THE DISPUTE

This is a patent infringement case. After a dispute arose between OWL and SnapPower over their respective products, OWL filed this lawsuit seeking a declaratory judgment of noninfringement and invalidity as to SnapPower's patents, and a claim for tortious interference. Compl. ¶¶ 16–53 [1]. In return, SnapPower asserts counterclaims for patent infringement of its two patents — U.S. Patent No. 9,035,180 ("'180 Patent")

MEMORANDUM OPINION AND ORDER – PAGE 1

and U.S. Patent No. 9,871,324 ("'324 Patent").  Answer 12–18 [9].  It also asserts a counterclaim for violation of the Texas Citizens Participation Act ("TCPA").  *Id.* at 18.

The two patents are both titled "Active Cover Plates."  They relate to a cover for an electrical box, such as an outlet or light switch, where the cover is configured to make an electrical connection with the device in the box. The electricity can then be used to power electrical loads built into the cover, such as a night light.  OWL's Mot. Summ. J. 1 [52].  SnapPower asserts that OWL's Accused Products infringe claims 1, 2, 3, 5, 6, 11, 12, 13, and 15 of the '180 Patent and claims 1, 2, 4, 8, 9, 10, 13, 14, 15, 17, 19, 20, 23, and 25 of the '324 Patent.  SnapPower's Resp. 2 [55].  OWL now moves for summary judgment of noninfringement on all patent claims. OWL's Mot. 8 [52].  SnapPower moves for partial summary judgment of infringement on claims 1, 2, 5, 11, 12, 13, and 15 of the '180 Patent and claims 1, 2, 8, 13, 14, and 15 of the '324 Patent.  SnapPower's Br. Supp. Partial Summ. J. 4–15 [49].

## II. Legal Standards

### A. Summary Judgment Standard

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).  The moving party bears the initial burden of

informing the court of the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a party bears the burden of proof on an issue, "he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). When the nonmovant bears the burden of proof, the movant may demonstrate entitlement to summary judgment either by (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense, or (2) arguing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. *Celotex*, 477 U.S. at 322–25.

Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact so that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Moreover, "[c]onclusory allegations, speculation, and unsubstantiated assertions" will not suffice to satisfy the nonmovant's burden. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1). Factual controversies are resolved in favor of the nonmoving party "only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999) (quoting *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

MEMORANDUM OPINION AND ORDER – PAGE 3

### B.  Patent Infringement Standard

Courts use a two-step process to analyze patent infringement.  *Dow Chem. Co. v. Sumitomo Chem. Co.*, 257 F.3d 1364, 1372 (Fed. Cir. 2001).  First, the Court must construe the patent claims to determine their scope.  *Id.*  Second, the Court compares the construed claims to the accused product.  *Id.*  Infringement can take the form of literal infringement or infringement by equivalents.  *Id.*  Literal infringement occurs when "the accused product meets all the limitations of the asserted claims."  *E.I. du Pont de Nemours & Co. v. Unifrax I LLC*, 921 F.3d 1060, 1073 (Fed. Cir. 2019).  There is no literal infringement if any claim limitation is not met.  *Id.*

Infringement by equivalents occurs when each element of the accused product "performs substantially the same function, in substantially the same way, to achieve substantially the same result" as each element of the patented product.  *Lockheed Martin Corp. v. Space Systems/Loral, Inc.*, 324 F.3d 1308, 1320 (Fed. Cir. 2003) (citing *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 40 (1997)).  However, under the vitiation doctrine, there can be no infringement by equivalents if the infringement theory "renders a claim limitation inconsequential or ineffective."  *Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*, 811 F.3d 1334, 1342 (Fed. Cir. 2016).  This doctrine works to ensure that infringement by equivalents does not effectively eliminate an element of a claim.  *Edgewell Personal Care Brands, LLC v. Munchkin, Inc.*, 998 F.3d 917, 923 (Fed. Cir. 2021).  "Claim vitiation is a legal determination that 'the evidence is such that no reasonable jury could determine two elements to be equivalent.'"  *Id.* (quoting *Deere &*

*Co. v. Bush Hog, LLC*, 703 F.3d 1349, 1356–57 (Fed. Cir. 2012), *abrogated on other grounds by Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898 (2014)).

### III. THE COURT GRANTS SUMMARY JUDGMENT OF NONINFRINGEMENT FOR OWL ON THE '180 PATENT

To prevail on a motion for summary judgment, OWL, as the movant, must show that no genuine dispute of material fact exists, and that the undisputed facts entitle it to judgment as a matter of law. The Court finds that there is no genuine dispute of material fact and OWL is entitled to a judgment of noninfringement of the '180 Patent.

### A. *OWL Does Not Infringe Claim 1 of the '180 Patent*

Claim 1 of the '180 Patent recites, in relevant part, an "active cover plate comprising: a faceplate; a load; and a spring clip extending rearward from the faceplate to interface with a receptacle body." '180 Patent col. 16 ll. 10–14. The spring clip comprises "a flexible conductive portion connected to the face plate by a first end; and a non-conductive portion connected to an opposite end of the flexible conductive portion; wherein an electrical contact on the spring clip contacts a side screw terminal on the receptacle body." *Id.* ll. 15–21. Figure 3D shows one embodiment of this spring clip:



*Fig. 3D*

*Id.* fig. 3D. This figure shows the conductive portion (335) connected to the face plate at one end and to the non-conductive portion (305) at the other end. *See id.* col. 5 ll. 58–60.

The Court construed the relevant portions of this claim in its Order issued on Feb. 7, 2023. Memorandum Opinion and Order [29]. The Court concluded that "spring clip" was defined in the language of the claim and needed no further construction. *Id.* at 15. The Court similarly found that "flexible conductive portion" and "non-conductive portion" were words of common usage and needed no further construction. *Id.* at 15–16.

SnapPower contends that the Accused Products literally infringe Claim 1. Appx. 10–11 [50].[1] In response, OWL argues that (1) the wire in the Accused Products is not a flexible conductive portion; (2) even if it is, it is not connected to the face plate at its first end, but instead to the load; and (3) it is not connected to the non-conductive portion of the spring clip, but is instead connected to the electrical contact. OWL's Mot. 9–12 [52]. Because the Court finds that the Accused Product's wire is neither connected to the face plate nor to the non-conductive portion of the spring clip, the Court concludes that the Accused Products do not infringe Claim 1 of the '180 Patent.

The Court starts the analysis by assuming, without deciding, that the wire in the Accused Products is the "flexible conductive portion" of the spring clip as required by Claim 1. As shown below, the Accused Products utilize a wire to establish an electrical connection between a metal electrical contact and a printed circuit board ("PCB") inside the face plate:

---

[1] Citations to Appx. are to ECF No. 50, SnapPower's Appendix in support of its motion for partial summary judgment.

MEMORANDUM OPINION AND ORDER – PAGE 6

 

Appx. 10.

OWL argues that this wire is not connected to either the face plate at its first end or the non-conductive portion of the spring clip at its opposite end. The Court agrees. It is evident from these images that a first end of the wire connects directly to the PCB, not the face plate. The PCB acts as the "load" — a separate element of Claim 1 than the face plate. Indeed, both OWL's expert and SnapPower's expert agree that the PCB is a "load." *See* Appx. 152, 433.

Similarly, the opposite end of the wire is not connected to the non-conductive portion of the spring clip. Instead, it connects to a conductive electrical contact. And "electrical contact" is another, separate element of Claim 1 from the non-conductive portion of the spring clip. While the electrical contact in the Accused Products is itself connected to the non-conductive portion of the spring clip, there is no direct connection between the wire and the non-conductive portion, as required by Claim 1. Accordingly, the flexible conductive portion of the Accused Products is neither connected to the face plate by a first end nor connected to a non-conductive portion of the spring clip by its opposite end.

MEMORANDUM OPINION AND ORDER – PAGE 7

SnapPower attempts to avoid this conclusion by arguing that the "end" of a wire does not need to be its "terminal end."  SnapPower's Resp. 3–5 [54].  In doing so, it cites *Munchkin, Inc. v. TOMY Int'l, Inc.*, 713 F. Supp. 3d 452, 467 (N.D. Ill. 2024), for its illustrative example that the "end of a novel is more than just the final period of the final sentence."  But this example is not helpful here.  Certainly the "end" of a wire includes more than its most terminal atom.  It must include some limited region near the terminal end.  But even considering that some region of a wire is considered its "end," no end of the Accused Products' wire is connected to the face plate or the non-conductive portion of the spring clip as required by Claim 1.

Other than the terminal end connected to the PCB, the most that SnapPower can point to as a "connection" between the wire and the face plate is the area in the middle where the wire runs through a raised plastic guide trough.  This picture, taken from the report of Dr. Mark Horenstein, SnapPower's infringement expert, points to the terminal end of the wire connected to the PCB and to the guide trough as the locations where the wire is "connected to the face plate":



Appx. 154.  However, even under the most generous interpretation of "end," the plastic guide trough is not at the end of the wire.  Additionally, it is not even clear that the guide trough is "connected" to the wire.

Further, Dr Horenstein's written opinions do not create an issue of fact as to whether the wire is connected to the face plate.  On this element of Claim 1, Dr. Horenstein produces the image shown above, and renders the following opinion: "As shown in the photo [above], one end of a flexible wire is connected to each of the clips of the face plate (red on one side; black on the other).  These wires in turn comprise the 'flexible conductive portion' that is connected to the face plate by a first end." *Id.*  This is the entirety of his opinion on the "connected to the face plate by a first end" element of Claim 1.  Such a conclusory statement, unsupported by the attached image and the physical reality of the Accused Products, does not create an issue of fact.  *See Jones v. United States*, 936 F.3d 318, 323 (5th Cir. 2019) (finding that expert affidavit with "conclusory . . . and unsubstantiated assertions cannot defeat summary judgment" (internal quotation marks omitted)); *Sitrick v. Dreamworks, LLC*, 516 F.3d 993, 1001 (Fed. Cir. 2008) ("Conclusory expert assertions cannot raise triable issues of material fact on summary judgment.").  Accordingly, the Court finds that the Accused Products' flexible conductive portion is not "connected to the face plate by a first end."

Similarly, SnapPower does not create a fact issue on whether the wire is connected to a non-conductive portion of the spring clip at its opposite end.  Dr. Horenstein produces another, equally conclusory, opinion that "each spring clip has a plastic portion that is non-conductive and is connected to an opposite end of the flexible conductive

wires, *e.g.* proximate the electrical contact." *Id.* at 154–55.  But this opinion fails to explain *how* the wire is connected to the non-conductive portion.  The use of "proximate the electrical contact" seems to be a tacit admission that the wire is not directly connected to the non-conductive portion but is connected to the electrical contact (which is itself connected to the non-conductive portion).  Accordingly, the Court finds that the Accused Products do not have "a non-conductive portion connected to an opposite end of the flexible conductive portion," and therefore do not infringe Claim 1.

Thus, the Court finds OWL does not infringe Claim 1 of the '180 Patent.  Then because there is no infringement of Claim 1, there can be no infringement of its dependent claims: 2, 3, 5, and 6.

### B.  OWL Does Not Infringe Claim 11 of the '180 Patent

Claim 11 of the '180 Patent recites "a faceplate; an electrical load; and a spring clip comprising an electrical contact . . . wherein a portion of the spring clip is configured to contact a wall of a receptacle box surrounding the receptacle body."  '180 Patent col. 16 ll. 60–67.  The Court determined that the phrases "configured to contact" and "wherein a portion of the spring clip is configured to contact a wall of a receptacle box surrounding the receptacle body" do not need any further construction given their straightforward language.  Mem. Op. & Order 18–19 [29].  In doing so, the Court rejected OWL's proposed means-plus-function construction.  *Id.* at 19.

Reviewing the evidence, the Court finds the Accused Products' spring clips are not "configured to contact a wall of a receptacle box" and therefore do not infringe Claim 11.  In accordance with the Court's claim construction, the term "configured to contact"

MEMORANDUM OPINION AND ORDER – PAGE 10

should be given its ordinary meaning in the context of this patent. To this point, both OWL's and SnapPower's experts appear to agree that to be "configured to" contact means that the spring clip was "designed to" contact the receptacle wall. *See* Appx. 164 (Horenstein Report) (stating that "the clip is also designed so that its upper angled portion will make contact with the wall of the receptacle box"); Appx. 442–43 (Direen Report) (stating that "the Accused Products are not 'designed for the purpose of' engaging or touching the inner wall of the receptacle box"). This meaning is also consistent with dictionary definitions for "configure." *E.g.*, *Configure*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/configure (last visited Nov. 8, 2024) ("to set up for operation especially in a particular way"). Thus, a product having the mere capability of contacting the wall is not "configured to" do so under the ordinary meaning of "configured."

Then, the summary judgment evidence shows that the Accused Products do not in fact touch the walls of most standard receptacle boxes. OWL's noninfringement expert, Dr. Direen, opines that the width of most common receptacle boxes is "approximately 2.25 inches, with a few options for wider or narrower receptacle boxes." Appx. 439. He then states that the Accused Products' spring clips are "approximately 2 to 2.15 inches" wide when inserted into a receptacle box. *Id.* at 439–40. Accordingly, he concludes that they do not in fact contact the wall of most receptacle boxes. *Id.* at 440.

SnapPower points out that Dr. Direen did find at least one receptacle box that was narrower than 2.15 inches. Def.'s Resp. 11 [54]. However, the fact that there exists a narrow receptacle box is not enough to show that the Accused Products were "configured

to" contact the wall of such a box. At best, this shows mere capability to touch the wall. A product that is "designed to" touch the wall would do so for more than the narrowest outlier receptacle box. Accordingly, the Court finds that the Accused Products' spring clips are not "configured to contact a wall of a receptacle box."

The report by SnapPower's expert, Dr. Horenstein, does not create a fact issue on this topic. He opines that "the clip is . . . designed so that its upper angled portion will make contact with the wall of the receptacle box in which it is installed." Appx. 164. However, that is the full extent of his discussion of the "configured to contact a wall" limitation. This conclusory statement does not create a genuine dispute of fact.

And this is not a situation where the Accused Products are "reasonably capable of satisfying the claim limitations, even though [they] may also be capable of non-infringing modes of operation." *See Hilgraeve Corp. v. Symantec Corp.*, 265 F.3d 1336, 1343 (Fed. Cir. 2001). The claim limitation here requires that the spring clips be "configured to" contact a receptacle box wall. And the evidence here shows the Accused Products do not in fact contact the wall of many standard receptacle boxes, and therefore could not be designed to, or configured to, contact the wall of such boxes. Thus, the products are not reasonably capable of being configured to contact such a wall.

Accordingly, the Court finds OWL does not infringe Claim 11 of the '180 Patent. And because Claims 12, 13, and 15 depend on Claim 11, the Court finds that they are

also not infringed.  Thus, because OWL infringed no claims in the '180 Patent, the Court

grants summary judgment of noninfringement for OWL. [2]

### IV.  THE COURT GRANTS SUMMARY JUDGMENT OF NONINFRINGEMENT FOR OWL ON THE '324 PATENT

#### A.  OWL Does Not Infringe Claim 1 of the '324 Patent

Claim 1 of the '324 Patent recites a face plate, an electrical load, and a clip

extending rearward from the face plate.  '324 Patent col. 30 ll. 25–27.  The clip comprises

a contact and "a resilient strip supporting a front side of the contact, wherein the contact

is joined to the resilient strip . . . ."  *Id.* ll. 27–29.  The Court found that the claim

language "the contact is joined to the resilient strip" needed no further construction

because "joined" is a word of common usage.  Mem. Op. & Order 7 [29].  OWL

specifically argues that the contact in the Accused Products is not "joined to" the resilient

strip and therefore does not infringe.  OWL's Mot. 17.

Reviewing the evidence, the Court finds that the Accused Products' contact is not

"joined to" the resilient strip and therefore does not infringe Claim 1 of the '324 Patent.

The Accused Products are set up so that the electrical contact rests inside a hole in the

spring clip and is held in place by a separate rear cover attached to the resilient strip.

This configuration is visible in these images from SnapPower's infringement contentions

and Dr. Horenstein's report:

---

[2] SnapPower does not argue in its Motion or its Response that either Claim 1 or Claim 11 of the '180 Patent is infringed under the doctrine of equivalents.  Therefore, the Court does not address infringement by equivalents for those claims.



Appx. 21, 184.

As visible in these images, once the back cover is removed, the contact can freely slide out of the hole in the resilient strip. OWL argues a person of ordinary skill in the art ("POSITA") would know that being "joined" to something requires more than just being inserted through a hole and supported from behind. OWL's Mot. 17 [52]. The Court agrees. Both the surrounding claim language and the specification describe the concepts of "support" and "joined" differently.

Claim 1 itself recites "a resilient strip *supporting* a front side of the contact, wherein the contact is *joined* to the resilient strip." '324 Patent col. 30 ll. 27–29 (emphasis added). And the specification further describes the two concepts differently. Generally, the specification discusses "joining" as being some form of mechanical fastening, such as "adhesive, heat welding, press fit, snap fit, induction welding," and other techniques. *Id.* col. 18 ll. 59–60. In contrast, the specification uses the word "supporting" when describing something being held in place. *See, e.g.*, *id.* col. 17 ll. 48–50 ("The U channel also prevents undesirable plastic bending of the spring clip by

supporting the spring clip." (citations omitted)).  And dictionary definitions of "join" and "support" also suggest that "joining" requires more than just holding something in place. *Compare Join,* MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/join (last visited Nov. 8, 2024) ("to put or bring together so as to form a unit"), *with Support*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/support (last visited Nov. 8, 2024) ("to hold up or serve as a foundation or prop for").

The contact in the Accused Products is only inserted through a hole in the resilient strip and held in place by the back cover.  In this way, it is only "supported" by the resilient strip and not "joined" to it.  Therefore, the Court finds that OWL does not infringe Claim 1 of the '324 Patent.

SnapPower does not create a genuine issue of fact on this point by way of Dr. Horenstein's report.  His report includes the images shown above, and then simply states that "the contact is affixed to the clip, e.g. when inserted through the hole, by attaching the rear insulation and by attaching the back plate." Appx. 173.  This is an argument that the contact is "joined to" the clip because it sits inside the hole and is supported by the back plate.  But because the Court concluded that "support" and "join" must mean different things in the context of this patent, this opinion is insufficient to create a genuine issue of fact.

Additionally, SnapPower argues against this conclusion by stating that a single structure can fulfill multiple claim limitations — supporting and joining in this case. SnapPower's Resp. 12–13 (citing *Intell. Prop. Dev., Inc. v. UA-Columbia Cablevision of Westchester, Inc.*, 336 F.3d 1308, 1320 n.9 (Fed. Cir. 2003)).  It is true that a single

MEMORANDUM OPINION AND ORDER – PAGE 15

structure can satisfy multiple limitations.  But here, the Accused Products simply do not fulfill the "joined to" requirement, either in one structure or multiple.

Thus, because the Court finds that the contact in the Accused Products is not "joined to" the resilient strip, the Court concludes OWL does not infringe Claim 1 of the '324 Patent.[3]  Then, because Claims 2, 4, 8, 9, and 10 are dependent on Claim 1, the Court finds they are also not infringed.

### B.  OWL Does Not Infringe Claim 13 of the '324 Patent

Claim 13 recites a face plate, load, and clip wherein the clip comprises a contact, a conductor, and a front and rear insulator "wherein the conductor is sandwiched between the front insulator and the rear insulator."  '324 Patent col. 31 ll. 2–4.  The Court construed "sandwiched between" as "a third element placed between and in contact with a first and second element."  Mem. Op. & Order 8 [29].  OWL argues that the conductor in the Accused Products is not sandwiched between the front and rear insulator.  OWL's Mot. 20–22 [52].

After reviewing the evidence, the Court finds that the Accused Products' conductor is not sandwiched between the front and rear insulators because it does not contact both insulators at the same time.  Both parties agree that the clips on the Accused Products have a front insulator, a rear insulator, and a wire (conductor) that sits between the insulators.  *See* Appx. 183–85 (Horenstein Report); Appx. 471 (Direen Report).  Under the Court's claim construction, the parties agree that the wire is the "third

_____

[3] SnapPower did not argue in its Motion or its Response that Claim 1 of the '324 Patent was infringed by equivalents.  Accordingly, the Court does not address infringement by equivalents for this claim.

MEMORANDUM OPINION AND ORDER – PAGE 16

element" that is placed between the "first and second" elements—the front and rear insulators. *See* Appx. 185–86; Appx. 471. The only dispute is whether the wire contacts both the front and rear insulators simultaneously.

SnapPower's expert, Dr. Horenstein, opines that because the clip and wire are both flexible, and because the clip flexes when installed, that the wire "must, of necessity" contact both insulators "in multiple places." Appx. 186. He expounds that "it would not be possible to support such wire in mid-air between its point of entry and the contact, over the range of motion for the clip when the cover plate is used as intended, without contact between the wire and the inside surfaces of the clip and the back cover." *Id.* Accompanying this opinion, he includes the following image:



*Id.*

However, OWL's evidence clearly refutes this assertion. Dr. Direen's opinion is that when the clip is flexed, the wire only contacts one insulator at a time, and not both. Appx. 473, 476. In support, he relies on cross-sectional images of the clips:

 

Appx. 476.  These images clearly show that the wire does not touch the rear insulator when the clip is flexed (or otherwise).  Thus, the wire in the Accused Products is not "sandwiched between" the insulators because it never contacts both insulators at the same time.  And Dr. Horenstein's report does not create a fact issue on this point.  His statements, which directly contravene the physical reality of the Accused Products, do not amount to a genuine dispute of material fact.  Also, SnapPower's argument that the wire could have touched the part of the rear insulator that was removed for the photo is unavailing.  There is no indication that a forward–backward flex would cause the wire to move left or right, and there is no summary judgment evidence to that effect either.

SnapPower also points to the very top of the spring clips to argue that the front and rear insulators simultaneously contact the conductor at that point.  However, the insulators at the top of the clips touch the *contact* — a different element of Claim 13 than the conductor.  Thus, this argument fails.

Further, the Accused Products do not infringe Claim 13 under the doctrine of equivalents because a finding of infringement by equivalents would vitiate the

"sandwiched" limitation. Omitting the word "sandwiched" from the claim results in the claim reading: "the conductor is . . . between the front insulator and rear insulator." *See* '324 Patent col. 31 ll. 3–4. Finding infringement without requiring the physical contact required by "sandwiched" would remove this claim limitation, just as if the word had been left out. Accordingly, OWL does not infringe Claim 13, literally or by equivalents. Further, OWL does not infringe Claims 14 and 15 because they depend on Claim 13.

### C. OWL Does Not Infringe Claim 17 of the '324 Patent

Claim 17 recites an active cover plate, with a faceplate comprising "three spaced apertures along one edge." '324 Patent col. 31 ll. 13–14. The Court construed "aperture" to mean "opening," and found that "three spaced" does not require further construction. Mem. Op. & Order 10 [29]. OWL argues that the Accused Products do not have these three spaced apertures along one edge. OWL's Mot. 25–28 [52]. Upon reviewing the evidence, the Court agrees.

Dr. Horenstein opines that the Accused Products infringe this limitation by way of the "three optical ports" near the Accused Products' PCB. Appx. 190. Dr. Horenstein provides the following images supporting his position:



Appx. 191.  However, these images, coupled with those supplied by OWL's expert, show only one opening on the face plate.  The face plate has one aperture, in which a single piece of transparent plastic sits.  This piece of plastic has three ridged areas corresponding to the location of the LEDs. However, the plastic sits within one large opening in the face plate:



Appx. 479.  And further, even if the plastic piece is itself part of the face plate, it still does not have three apertures as recited in Claim 17.  The three ridged areas are not "openings." They just have a different texture than the rest of the plastic, and do not extend through the edge of the face plate.  *See* Appx. 480.  Accordingly, there is no genuine dispute of fact as to whether there are three spaced apertures on one edge of the face plate.

Claim 17 is also not infringed by equivalents.  Allowing a product with one aperture to infringe as an equivalent would vitiate the claim requirement that there be "three spaced apertures."  Permitting fewer apertures to result in infringement by equivalents would functionally eliminate this numerical requirement.  Thus, OWL does not infringe Claim 17 of the '324 Patent.  And Claims 19, 20, 23, and 25 are not infringed because they depend on Claim 17.

MEMORANDUM OPINION AND ORDER – PAGE 20

Because OWL's Accused Products do not infringe any claims of the '324 Patent, the Court grants summary judgment of noninfringement for OWL.[4]

### V. THE COURT GRANTS SUMMARY JUDGMENT FOR SNAPPOWER ON OWL'S TORTIOUS INTERFERENCE CLAIM

In addition to asserting claims for declaratory judgment of noninfringement and invalidity, OWL asserts a claim for tortious interference with existing contract. Compl. ¶¶ 50–53. In response to SnapPower's motion for partial summary judgment, OWL agreed to drop its tortious interference claim. *See* SnapPower's Br. Supp. Partial Summ. J. 15 [49]; OWL's Resp. 21 [53]. Accordingly, the Court grants summary judgment for SnapPower on OWL's tortious interference claim.

### CONCLUSION

Upon reviewing the evidence, the Court finds that there is no genuine dispute of fact regarding patent infringement and that the Accused Products do not infringe SnapPower's Patents. Accordingly, the Court grants summary judgment of noninfringement for OWL. Further, the Court grants summary judgment for SnapPower on OWL's tortious interference claim, but otherwise denies SnapPower's motion for partial summary judgment. Following this Order, the only remaining claim in this case is SnapPower's counterclaim under TCPA.

---

[4] Having granted summary judgment of noninfringement on all claims, the Court views the issue of patent invalidity as moot. Accordingly, the Court denies SnapPower's motion for summary judgment as it relates to any of OWL's claims for invalidity.

MEMORANDUM OPINION AND ORDER – PAGE 21

Signed November 19, 2024.

David C. Godbey
Chief United States District Judge